GREG L. KIRAKOSIAN  (SBN 294580)
**KIRAKOSIAN LAW, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE: (213) 417-9790
FACSIMILE:  (213) 477-2355
[GREG@KIRAKOSIANLAW.COM]

Attorneys for Plaintiff, *LYLE SPRUILL*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYLE SPRUILL, an individual,<br><br>                    Plaintiff,<br><br>        vs.<br><br>COUNTY OF LOS ANGELES, a public entity; DEPUTY JAIME GOMEZ JR., an individual; DEPUTY MONICA GONZALES, an individual; DEPUTY JOSHUA MUNOZ, an individual; DEPUTY SAUL GOMEZ, an individual; DEPUTY RYAN ROTHROCK, an individual; DEPUTY JUAN PUENTE, an individual; DETECTIVE LAURA PERALES, an individual; SERGEANT MICHAEL RODRIGUEZ, an individual; SERGEANT COREY WALKER, an individual; and DOES 1 – 15, inclusive,<br><br>                    Defendants. | **Case No.: 2:20-cv-07909**<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **VIOLATION OF CIVIL RIGHTS – *SEARCH AND SEIZURE*;**<br>2. **VIOLATION OF CIVIL RIGHTS – *DEVEREAUX CLAIM*;**<br>3. **MALICIOUS PROSECUTION; and**<br>4. **VIOLATION OF CIVIL RIGHTS – *MONELL CLAIM*.**<br><br>**DEMAND FOR JURY TRIAL** |

- 1 –

**COMPLAINT FOR DAMAGES**

**<u>INTRODUCTION</u>**

1.       Plaintiff Lyle Spruill brings this Civil Rights and Malicious Prosecution claim against the Los Angeles County Sheriff's Department and Deputies J. Gomez, M. Gonzales, S. Rothrock, S. Gomez, J. Puente, and J. Munoz; Sergeants M. Rodriguez and C. Walker; Detective L. Perales; and DOES 1 through 15, inclusive. These claims arise out of Plaintiff's arrest by two Sheriff's Deputies that alleged Mr. Spruill had drawn a firearm and attempted to murder the Deputies on December 3, 2019.  After remaining in custody for six months on these false charges, on or about June 11, 2020, exculpatory video evidence and a negative gun powder residue test were finally released by the County. This evidence fully exonerated Plaintiff and resulted in all charges being immediately dropped. As a result, Mr. Spruill was immediately released from custody.

2.       Specifically, on December 3, 2019, at approximately 5:45 p.m., Los Angeles County Sheriff's Deputies Rothrock, S. Gomez, Munoz, and J. Puente arrived in a parking lot of a mini-mall in Compton and detained a group of approximately eight Black men that were lawfully gathered directly in front of a barber shop.  As the Deputies were detaining these men, Mr. Spruill walked past the group without incident, arrived at his vehicle, and sat inside. Suddenly, Deputies J. Gomez and M. Gonzales pulled into the parking lot and, without any just or probable cause, searched and seized Mr. Spruill.

3.       Deputies J. Gomez and M. Gonzales, knowing they had neither reasonable suspicion nor probable cause to stop, seize, or search Mr. Spruill, a Black male who was lawfully sitting in his vehicle, fabricated observations and submitted false reports as a pretextual means to violate Mr. Spruill's Civil Rights. To make matters worse, Deputies J. Gomez and M. Gonzales falsely accused Mr. Spruill of attempted murder and falsely declared that they witnessed him stop, turn, and fire a weapon upon the deputies in an attempt to murder them. Additionally, Deputies Munoz, S. Gomez, J. Puente, and R. Rothrock, along with Detective Perales all conspired to fabricate

- 2 –

**COMPLAINT FOR DAMAGES**

statements, observations, and communications in what can only be described as a concerted effort to falsely charge and maliciously prosecute Mr. Spruill as well as cover up for their fellow deputies' wrongful conduct.

4. As discussed in further detail below, the surveillance video unequivocally shows that Mr. Spruill was not only innocent of all charges, but that the Defendant Deputies knew of his innocence and provided false statements and reports in violation of Mr. Spruill's constitutional rights and in an attempt to maliciously prosecute Mr. Spruill for (1) attempted murder on a police officer, (2) assault with a deadly weapon, and (3) the discharge of a firearm. However, video evidence showed that Mr. Spruill never even had a gun and Mr. Spruill's clothing and hands were tested for gunpowder residue which came back negative. As such, Mr. Spruill's innocence is uncontroverted.

5. There is nothing new about the unlawful conduct alleged herein. Amongst countless Sheriff's Deputies, it's called a "ghost gun," where Deputies knowingly fabricate probable cause and bring false charges against individuals on claims to have spotted a weapon that never existed and is never found. This unlawful conduct plays out regularly in Los Angeles by several cliques that call themselves the Executioners, Grim Reapers, Banditos, the Vikings, Regulators, 3000 Boys, and Jump Out Boys. In fact, a Civilian Oversight Commission has reported to identify at least 17 gangs within the Sheriff's Department. These gangs do not allow Black members, sport tattoos of skulls, Nazi imagery, and AK-47s, and have been known to run the Los Angeles County Sheriff's Department for decades. The only reason this type of illegal activity and lawlessness has survived is because the County has willfully turned a blind eye.

6. These LASD gangs have operated out of several Sheriff's Department stations and jails for decades, exhibiting a long history of violence, aggressions, false reports, and Civil Rights violations that date back to the 1990s. Hundreds of deputies are tattooed members of these gangs and countless more prospective Deputies are initiated or show their worth to the gangs by committing similar Civil Rights violations. The unlawful gangs now dominate every aspect of life at numerous Sheriff stations

throughout the Los Angeles County. Moreover, Deputies that refuse to cooperate or report these gang members to Internal Affairs are met with threats of violence.

7.     The Sheriff's Department has been aware of these gangs and the foregoing conduct for decades and has failed to take corrective measures to crack down on routine and pervasive violations of people's Civil Rights. The fact that these issues have been festering since the 90s and have exponentially gotten worse is an illustration of the willful failure of the County to address these issues.  In fact, the Sheriff's Department has actively obstructed internal investigation into these gangs and, as a result, effectively ratified the unlawful conduct.

8.     Deputies with alleged ties to these tattooed gangs that regularly use violent and aggressive tactics similar to those of criminal street gangs have cost taxpayers $55 million in settlements and payouts in incidents that date to the 1990s. The County has paid out nearly $21 million in cases beginning in the last 10 years alone. As a direct result of the Sheriff's Department's ratification and willful failure to prevent such conduct, the FBI has begun their own investigation into these violent gangs. The conduct has grown so rampant in Compton, the Compton Mayor has also called on the State Attorney General and the U.S. Justice Department to investigate.

9.     As a direct result of the conduct alleged herein, Mr. Spruill was maliciously prosecuted and remained in custody on false charges and in violation of his Civil Rights from December 3, 2019 until his release on June 11, 2020. As a result of the conduct alleged herein and the false and malicious prosecution of Mr. Spruill, he faced a sentence of 25 years to life for the false accusation of attempted murder on a police officer (along with the other false charges).  While in custody, Mr. Spruill lost his job, lost his car, and lost his home, resulting in both him and his elderly mother becoming homeless. Had the video surveillance not caught the incident and the gunpowder test not been completed, it would have been Mr. Spruill's word against the numerous Deputies and Detectives who knowingly submitted false reports with knowledge that there was a substantial likelihood that Mr. Spruill would be convicted

**COMPLAINT FOR DAMAGES**

and face over 25 years in prison. As a result of the foregoing conduct, Mr. Spruill faced extreme depression, fear, anxiety, loss of sleep, and various other symptoms and conditions associated with extreme emotional distress.

## PARTIES

10. Plaintiff Lyle Spruill is now a resident of Los Angeles, California and within the jurisdiction of the Central District of California.

11. At all relevant times, Defendant Los Angeles County (the "County") is and was a municipal corporation existing under the laws of the State of California. The County is a chartered subdivision of the State of California with the capacity to be sued. The County is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Los Angeles County Sheriff's Department ("Sheriff's Department") and its agents and employees. At all relevant times, Defendant County was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the Sheriff's Department and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, County was the employer of DOES 1 - 15.

12. Defendant DEPUTY JAIME GOMEZ JR., (identified by the County with LASD Badge Number #506162) is and was, at all relevant times, an officer working for the County and Sheriff's Department and was acting under color of law within the course and scope of his duties as an officer for the County. At all relevant times, Defendant Gomez was acting with the complete authority and ratification of his principals, the County, and Sheriff's Department.

13. Defendant DEPUTY MONICA GONZALES, (identified by the County with LASD Badge Number #618170) is and was, at all relevant times, an officer working for the County and Sheriff's Department and was acting under color of law within the course and scope of his duties as an officer for the County. At all relevant times, Defendant Gonzales was acting with the complete authority and ratification of his principals, the County, and Sheriff's Department.

**COMPLAINT FOR DAMAGES**

14.    Defendant DEPUTY JOSHUA MUNOZ, (identified by the County with LASD Badge Number #615111) is and was, at all relevant times, an officer working for the County and Sheriff's Department and was acting under color of law within the course and scope of his duties as an officer for the County. At all relevant times, Defendant Munoz was acting with the complete authority and ratification of his principals, the County, and Sheriff's Department.

15.    Defendant DEPUTY SAUL GOMEZ, (identified by the County with LASD Badge Number #517809) is and was, at all relevant times, an officer working for the County and Sheriff's Department and was acting under color of law within the course and scope of his duties as an officer for the County. At all relevant times, Defendant Gomez was acting with the complete authority and ratification of his principals, the County, and Sheriff's Department.

16.    Defendant DEPUTY RYAN ROTHROCK, (identified by the County with LASD Badge Number #528312) is and was, at all relevant times, an officer working for the County and Sheriff's Department and was acting under color of law within the course and scope of his duties as an officer for the County. At all relevant times, Defendant Rothrock was acting with the complete authority and ratification of his principals, the County, and Sheriff's Department.

17.    Defendant DEPUTY JUAN PUENTE, (identified by the County with LASD Badge Number #530672) is and was, at all relevant times, an officer working for the County and Sheriff's Department and was acting under color of law within the course and scope of his duties as an officer for the County. At all relevant times, Defendant Rothrock was acting with the complete authority and ratification of his principals, the County, and Sheriff's Department.

18.    Defendant DETECTIVE LAURA PERALES, (identified by the County with LASD Badge Number #516562) is and was, at all relevant times, an officer working for the County and Sheriff's Department and was acting under color of law within the course and scope of his duties as an officer for the County. At all relevant

- 6 –

**COMPLAINT FOR DAMAGES**

times, Defendant Perales was acting with the complete authority and ratification of his principals, the County, and Sheriff's Department.

19.     Defendant SERGEANT MICHAEL RODRIGUEZ, (identified by the County with LASD Badge Number #462145) is and was, at all relevant times, an officer working for the County and Sheriff's Department and was acting under color of law within the course and scope of his duties as an officer for the County. At all relevant times, Defendant Rodriguez was acting with the complete authority and ratification of his principals, the County, and Sheriff's Department.

20.     Defendant SERGEANT COREY WALKER, (identified by the County with LASD Badge Number #410484) is and was, at all relevant times, an officer working for the County and Sheriff's Department and was acting under color of law within the course and scope of his duties as an officer for the County. At all relevant times, Defendant Walker was acting with the complete authority and ratification of his principals, the County, and Sheriff's Department.

21.     Defendants DOES 1 - 10 ("DOE Officers") are officers working for the County and Sheriff's Department. DOE Officers were acting under color of law within the course and scope of their duties as officers for the County and Sheriff's Department. DOE Officers were acting with the complete authority and ratification of their principal, Defendant County and Sheriff's Department.  The use of the term "Defendants" in any of the allegations of this Complaint, unless specifically set forth as otherwise, is intended to include and charge both jointly and severally, not only the County but all Defendants designated as DOES 1 - 10 as well.

22.     Defendants DOES 11 - 15 are managerial, supervisorial, and policymaking employees of the County and Sheriff's Department, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the County. DOES 11 - 15 were acting with the complete authority and ratification of their principal, Defendant County and Sheriff's Department. In doing the acts and failing and omitting to act as hereinafter described,

Defendant Deputies, Detectives, and Sergeants named herein were acting on the implied and actual permission and consent of Defendants DOES 11 - 15.

23.    DOES 1 – 15 are sued in their individual capacity and Plaintiffs are informed and believe that DOES 1 – 15 were, at all relevant times, residents of the County of Los Angeles, California. In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1 - 15 were acting on the implied and actual permission and consent of the County. The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1 - 15, inclusive, are unknown to Plaintiffs, who otherwise sues these Defendants by such fictitious names. Plaintiffs will seek leave to amend their complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously named Defendants are responsible in some manner for the conduct or liabilities alleged herein.

24.    At all times mentioned herein, each and every Defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant. All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

25.    On July 1, 2020, Plaintiff submitted his Claim for Damages with the County and his Application for leave to submit a late claim with respect to several state claims. On August 14, 2020, Plaintiff was advised that the Claim and Application was denied.  On August 17, 2020, Plaintiff filed a Petitioner in the Superior Court of California for relief to bring a late claim.  Upon the Superior Court granting said Petition, Plaintiff will seek leave to amend this Complaint to include several state claims.

COMPLAINT FOR DAMAGES

## JURISDICTION AND VENUE

26.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## FACTUAL ALLEGATIONS

27.     Spruill is a 44-years-old Black male that has two professional licenses to act as a professional welder and worked as an independent contractor throughout the greater Los Angeles area. At all relevant times, Mr. Spruill took care of and provided for his two children and mother who resided with him.

28.     Mr. Spruill works in the greater Los Angeles area and has many connections to the neighborhood and area where the incident occurred.  As an example, his aunt lives around the corner from the Incident and his girlfriend worked around the corner of the Incident. As such, Mr. Spruill was regularly and lawfully in the area where the Incident occurred.

29.     On December 3, 2019, Mr. Spruill's work required him to weld the exterior gates of an apartment complex near the Staples Center in downtown Los Angeles.  He worked from approximately 6:00 a.m. to 3:00 p.m. After working, Mr. Spruill intended on visiting his Aunt that resides in Compton and wait for his girlfriend, who worked near 135th and Avalon, to get off work. After visiting his Aunt, Mr. Spruill went to get food approximately 2 miles away and was going to park in the parking lot of a mini-mall near where his girlfriend worked. This was a routine that Mr. Spruill had done many times in the past (i.e. waiting in the area until his girlfriend got off work).

COMPLAINT FOR DAMAGES

### THE LAYOUT AND SURVEILLANCE VIDEO OF INCIDENT

30.     The relevant events concerning this Complaint and the false accusation that Mr. Spruill attempted murder of Deputies J. Gomez and M. Gonzales occurred in the parking lot directly west of the Golden Bird Restaurant in Compton, California.

31.     The incidents that are described herein and are the subject of this Complaint were all captured by a security camera operating and mounted on the west side of the Golden Bird restaurant.  The surveillance depicts the parking lot of the Golden Bird restaurant and 135th Street.

### MR. SPRUILL WAS LAWFULLY PRESENT AND COMMITTED NO CRIMES ON THE DATE OF THE INCIDENT.

32.     On December 3, 2019, at approximately 5:37 p.m., Mr. Spruill arrived in the parking lot of the Golden Bird Chicken restaurant.

33.     At approximately 5:49 p.m., Mr. Spruill exited the "7-Twenty Four" mini market and observed approximately four Los Angeles County Sheriff's (who were later identified as Deputies Rothrock, S. Gomez, Munoz, and Puente) detaining approximately eight Black men that appeared to be gathered outside the "All in the Kut" barber shop that was directly next to the mini market. Mr. Spruill slowly walked past the four Deputies without incident and approached his vehicle without incident.

34.     At approximately 5:49 p.m., Mr. Spruill had already reached his vehicle without incident and was in the process of entering his vehicle when an additional Los Angeles County Sheriff's vehicle entered the parking lot from 135th Street. The surveillance video depicts Mr. Spruill already in his vehicle before Deputies J. Gomez and M. Gonzalez had entered the parking lot and approached his vehicle. Mr. Spruill was lawfully present in the parking lot and had committed no crimes.

### FALSE STATEMENTS BY DEPUTIES J. GOMEZ AND M. GONZALES TO CONDUCT AN UNLAWFUL SEARCH AND SEIZURE OF MR. SPRUILL.

35.     As illustrated in the previous paragraphs and captured by the video surveillance, it is undisputed that Mr. Spruill was already inside his vehicle when

**COMPLAINT FOR DAMAGES**

Deputies J. Gomez and M. Gonzales exited their vehicle parked directly in front of Mr. Spruill. As the surveillance footage shows, a female Deputy (later identified as Deputy M. Gonzales) approached Mr. Spruill's vehicle followed by a male Deputy (later identified as Deputy J. Gomez).

36.   Despite the uncontroverted evidence, Deputy Jaime Gomez falsely stated the following in his Report: "As we drove into the parking lot, we observed [Spruill…] walking away from the group of male Blacks. It appeared he was attempting to disassociate himself from them."

37.   Similarly, Deputy Monica Gonzales falsely stated the following in her Report: "I immediately saw a male black adult attempting to disassociate himself from the group and walk towards a vehicle which was parked on the west side of the parking lot facing east."

38.   Despite the uncontroverted evidence that Mr. Spruill was already in his vehicle before the deputies exited their vehicle. Deputy Jaime Gomez Jr. falsely stated the following in his Report:   "We attempted to contact [Mr. Spruill] to gather information regarding the assault with a deadly weapon. [Mr. Spruill] ignored us, walked toward his vehicle … and sat in the driver seat."

39.   Similarly, Deputy Monica Gonzales falsely stated the following in her Report: "I contacted [Mr. Spruill] who began entering the vehicle and asked him where he was coming from…"

40.   The foregoing statements are obviously and unquestionably false.  Under the circumstances, it was a complete fabrication to report that Mr. Spruill appeared to be "walking away from the group of Blacks" or that "it appeared [Mr. Spruill] was attempting to disassociate himself from them." Not only did the Deputies not see Mr. Spruill walking (as he was already at his vehicle when they pulled into the lot and in his vehicle when they arrived), the statements that the Deputies attempted to contact Mr. Spruill while he was walking and that Mr. Spruill ignored them and continued to walk to his vehicle is patently false. As discussed above, the video footage obtained clearly

**COMPLAINT FOR DAMAGES**

and unequivocally shows that when Deputies Gomez and Gonzalez approached Mr. Spruill's vehicle, Mr. Spruill was already seated inside his vehicle.

41. Moreover, Deputy J. Gomez states that, upon entry into the parking lot, Units 213D and 214E (i.e. Deputies Rothrock, S. Gomez, Munoz, and Puente) were already present in the parking lot and had already detained several Black males who were standing in the parking lot directly in front of "All in the Kut" barber shop. Under the circumstances, the only reasonable interpretation of events would mean that, even if assuming Deputies J. Gomez and Gonzales witnessed Mr. Spruill walking, he would have clearly been seen by the four deputies that were already present and had already detained eight other Black males. As such, the only reasonable interpretation under the circumstances would have led the Deputies to believe that Mr. Spruill was not part of that group and was not being detained or investigated by the four deputies that had already established a perimeter of the area. Moreover, there is no indication in the investigative record, including the reports of the other deputies, that Gonzales and J. Gomez were directed by any deputy already on-scene to make the stop.

42. Mr. Spruill clearly was not free to leave. His path was blocked by the squad car which had its emergency lights activated. There is no indication that he consented to a pat-down search.

43. Deputies J. Gomez and M. Gonzales knowingly, intentionally, and directly participated in the unlawful search and seizure of Plaintiff without reasonable suspicion. In light of the circumstances described herein, P.O.S.T standards and training, and Los Angeles County Sheriff's standards, policies and training, Deputies Gonzales and J. Gomez unlawfully detained Mr. Spruill without a reasonable suspicion that he had participated in or was about to commit a criminal offense.

44. LASD Policy 5-09/520.05 states the following: *"Department members shall only conduct investigatory stops or detentions when they have reasonable suspicion that a person has been, is, or is about to be engaged in the commission of a crime."*

**COMPLAINT FOR DAMAGES**

45.     At all relevant times, no reasonable suspicion or probable cause existed to search and seize Mr. Spruill. At all relevant times, Deputies J. Gomez and M. Gonzales had possession of absolutely no facts or basis to believe Mr. Spruill had been, was, or was about to be engaged in any crimes. Based on the facts readily available and known to the Deputies, no reasonable conclusion could be drawn that probable cause existed to stop, arrest, and interrogate Plaintiff. All objective facts readily available and known to the Deputies could not have reasonably led the Deputies to conclude that Plaintiff had committed or was committing a crime.  Moreover, in light of the foregoing, no material ambiguities existed to cause the Deputies to believe that any crime was committed, let alone committed by Plaintiff. As such, no reasonable person or reasonable officer, acting on said facts, could sensibly or reasonably conclude that probable cause existed to arrest Plaintiff.

46.     Also relevant to any pretextual assertion that the Deputies had probable cause or reasonable suspicion concerning Mr. Spruill is the fact that Deputy J. Gomez immediately walked away as Deputy Gonzales began her unlawful pat-down search. If there was reasonable suspicion that Spruill was involved in the shooting and still armed—this suspicion was required in order to conduct the pat-down—then it was a violation of police training standards for J. Gomez to walk away and leave Gonzales alone with a much larger and stronger suspect. Specifically, California P.O.S.T. Learning Domain 33 (33.02.E06) sets out the requirements for the "cover" officer when another officer is conducting a body search. These requirements include the following: (1) Maintain constant observation of the overall situation; (2) Exhibit command presence; (3) Protect the search officer from interference by onlookers; (4) Assist in restraining the subject if necessary; (5) Assist the search officer by taking possession of any found weapons.

47.     The fact that J. Gomez did none of these things is a good indication that he never really suspected Spruill of any crime at that point.

**COMPLAINT FOR DAMAGES**

48.     Deputies J. Gomez and M. Gonzales, under color of law intentionally, recklessly, negligently, unlawfully, with malice, fraud, and oppression violated Plaintiff's Civil Rights to be free from unreasonable search and seizure without due process in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the U.S. Constitution. Plaintiff further alleges that Defendants, with deliberate indifference to and reckless disregard for the safety and well-being of Plaintiff, and in violation of the Fourth and Fourteenth Amendments to the Constitution, did on December 3, 2019, commit or allow to be committed, acts which deprived Plaintiff of his Constitutional rights without affording him due process of law.

49.     Moreover, Deputies J. Gomez and M. Gonzales knowingly, intentionally, and directly participated in and engaged in efforts to cover up said unlawful conduct by providing false statements and preparing or authorizing or approving false police reports concerning their observations of Mr. Spruill. The intentional submission of false statements was committed with a conscious disregard of Plaintiff's rights conferred upon him by Section 1983, Title 42 of the United States Code, the Fourth Amendment to the United States Constitution and California Civil Code Section 3333, by intentionally causing him injury and arresting him without probable cause. Defendants, and each of them, had an unlawful and discriminatory interest in seeing Plaintiff charged with criminal conduct to detract from Defendants unlawful arrest of Plaintiff.

50.     Said conduct of Defendants constitutes malice, oppression and/or fraud, entitling Plaintiff to punitive damages against individual Defendants in an amount suitable to punish and set an example of said Defendants.

51.     Due to the conduct of Defendants, and each of them, Plaintiff has suffered general damages and special damages, all in a sum to be proved at trial. Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorneys' fees and will continue to incur attorneys' fees, all to Plaintiff's damage in a sum to be proved at trial and recoverable pursuant to 42 U.S.C. §1988.

**COMPLAINT FOR DAMAGES**

### FALSE STATEMENTS BY DEPUTIES J. GOMEZ AND M. GONZALES THAT MR. SPRUILL WAS OBSERVED STOPPING, TURNING, AND FIRING A WEAPON AT THE OFFICERS.

52.    As a direct result of Deputy J. Gomez and M. Gonzales' unlawful conduct, Mr. Spruill felt discriminated against and, in light of the history, pattern, and practice of Los Angeles County Sheriff's wrongfully arresting and framing Black men, Mr. Spruill felt unsafe, frightened, and scared that he would be wrongfully arrested.  As the Deputies were not able to provide any justification as to why Mr. Spruill could be considered a suspicious individual and was wrongfully denied the freedom to leave. In light of the wrongful search and seizure, Mr. Spruill ran.  It is important to note that Mr. Spruill was not charged with resisting arrest as the search and seizure was clearly unlawful.

53.    Despite the uncontroverted video surveillance footage that simply shows Mr. Spruill running, Deputy Jaime Gomez Jr. falsely stated the following in his Report: "As I ran through the parking lot, I looked through an opening in the cinder block wall and saw [Mr. Spruill] temporarily stopped approximately fifteen yards from my location, and [Mr. Spruill] turned toward his left. As soon as [Mr. Spruill] turned, I saw the firearm was pointed in a southeast direction towards Deputy Gonzalez and I. I then saw a bright muzzle flash coming from the firearm that [Mr. Spruill] was holding near his right hip area. The muzzle flash looked like a small, bright white and orange circular flash with a black hole in the middle which was the barrel of the firearm. Shortly after I saw the muzzle flash, I heard a loud gunshot."

54.    Similarly, Deputy Monica Gonzales falsely stated the following in her Report: "As [Mr. Spruill] approached Mettler Avenue, [Mr. Spruill] turned left and back towards my direction and I simultaneously heard a gunshot. I was unable to see the gun or the muzzle flash due to the fact that he had his back toward me."  It is clear this statement is not only false, it completely contradicts Deputy Gomez's statement that he clearly saw Mr. Spruill stop, turn toward his left (which would place Mr. Spruill facing

the Deputies, not with his back toward them as Deputy Gonzales states) and open fire toward Deputy Gonzales.

55. Further, Deputy Gonzales contradicts herself when stating … "[Mr. Spruill] turned left and back towards my direction and I simultaneously heard a gunshot." If this was true, then she would notice Mr. Spruill facing her. However, immediately following this statement, she states Mr. Spruill had his back to her and therefore could not see the alleged firing of the gun. Moreover, while Deputy Gonzales alleges she heard a gunshot and was fired upon, the video evidence clearly shows that she does not flinch or react in any way to the alleged gunfire, other than continuing to chase after Mr. Spruill (which as discussed below is contrary to standard training).

56. Not only are the Deputies statements inconsistent with one another, the video footage clearly shows that the Deputies accounts are patently false. Indeed, while Deputy Gonzalez was running through the parking lot, Mr. Spruill was approximately 15 yards away in between a tree and a "Mettler Avenue" street sign. However, the video footage clearly depicts this scene and at no point does Mr. Spruill temporarily stop, turn, pull a firearm, or shoot a weapon. The video footage clearly would have captured this alleged incident and clearly would have captured a bright muzzle flash or gunshot that Deputy J. Gomez eloquently describes.

57. Moreover, the conduct of the Deputies was in no way consistent with an armed individual who had just allegedly fired a gun at a deputy. LASD Policy 5-09/220.05 requires that a deputy broadcast a "998" when they are fired upon if warranted. The only time it would not be warranted is if the deputy returns fire and the suspect is immediately down. That was not the case here. Also, LASD Policy 5-09/220-50 relates specifically to foot pursuits, and states the following: *It is the Department's position that, barring extenuating circumstances, surveillance and containment are the safest tactics for apprehending fleeing persons. Therefore, deputies must initiate a radio broadcast with appropriate information within the first few seconds upon initiating a foot pursuit to ensure that adequate resources are coordinated and deployed to assist*

*and manage the operation to a safe conclusion."*

58.    One of the truly inexplicable circumstances of this case is why the Deputies would continue chasing a suspect who allegedly just fired a weapon at them and why would no Deputy called a "998" or "shots fired?" Unlike J. Gomez, who purportedly observed Spruill drop the weapon, Gonzales and the other deputies described no such observation (and it does not appear that Deputy J. Gomez advised anyone that Mr. Spruill allegedly dropped his weapon). The Deputies continued to pursue Mr. Spruill who quickly turned to the left and into the cover of the houses. In light of standard training and common sense, no reasonable officer would continue pursuing at that point if they believed the suspect was armed and willing to fire a weapon in an attempt to murder police officers. If there was any thought that Spruill was armed, especially if he had already used the weapon, certainly Gonzales and other Deputies would have pulled back and initiated containment as the policy requires.

59.    Also, another inexplicable circumstance of this case is that while the Deputies accuse Mr. Spruill of firing a weapon on them, not a single third party witness is interviewed concerning whether or not they witnessed Mr. Spruill fire a weapon, if they heard a gunshot, or any investigation concerning a potential victim of the alleged gunshot (which was allegedly pointed at Deputy Gonzales and J. Gomez and therefore could have struck a third party or structure upon missing Deputy Gonzales or J. Gomez.

60.    The video evidence clearly and unquestionably shows that Mr. Spruill neither stopped, turned, nor fired a weapon at the Deputies. Under the circumstances, it was unreasonable, improbable, and impossible to report that Mr. Spruill fired a weapon. At all relevant times, Deputies J. Gomez and M. Gonzales had possession of absolutely no facts or basis to believe Mr. Spruill had fired a weapon. Yet, Deputy J. Gomez provides a fabricated and false detailed account of his observations of Mr. Spruill and goes so far ~~as~~ far as to explain the bright muzzle flash ("I then saw a bright muzzle flash coming from the firearm that [Mr. Spruill] was holding near his right hip area. The muzzle flash looked like a small, bright white and orange circular flash with a black

hole in the middle which was the barrel of the firearm. Shortly after I saw the muzzle flash, I heard a loud gunshot.")

61.     Based on the facts readily available and known to the Deputies, no reasonable conclusion could be drawn that Mr. Spruill attempted to murder the officers. All objective facts readily available and known to the Deputies could not have reasonably led the Deputies to conclude that Plaintiff had committed or was committing the crime of firing a weapon and attempting to murder the Deputies.  Moreover, in light of the foregoing, no material ambiguities existed to cause the Deputies to believe that Plaintiff shot at the Deputies, let alone the degree of detailed provided by the Deputies. As such, no reasonable person or reasonable officer, acting on said facts, could sensibly or reasonably conclude that Plaintiff committed said crimes.

62.     Deputies J. Gomez and M. Gonzales, under color of law intentionally, recklessly, negligently, unlawfully, with malice, fraud, and oppression violated Plaintiff's Civil Rights to be free from unreasonable search and seizure without due process in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the U.S. Constitution. Plaintiff further alleges that Defendants, with deliberate indifference to and reckless disregard for the safety and well-being of Plaintiff, and in violation of the Fourth and Fourteenth Amendments to the Constitution, did on December 3, 2019, commit or allow to be committed, acts which deprived Plaintiff of his Constitutional rights without affording him due process of law.

63.     Moreover, Deputies J. Gomez and M. Gonzales knowingly, intentionally, and directly participated in and engaged in efforts to cover up said unlawful conduct by providing false statements and preparing or authorizing or approving false police reports concerning their observations of Mr. Spruill. The intentional submission of false statements was committed with a conscious disregard of Plaintiff's rights conferred upon him by Section 1983, Title 42 of the United States Code, the Fourth Amendment to the United States Constitution and California Civil Code Section 3333, by intentionally causing him injury and arresting him without probable cause. Defendants,

and each of them, had an unlawful and discriminatory interest in seeing Plaintiff charged with criminal conduct to falsely charge, detain, and incarcerate Mr. Spruill and also to detract from Defendants' unlawful arrest of Plaintiff.

64.    Said conduct of Defendants constitutes malice, oppression and/or fraud, entitling Plaintiff to punitive damages against individual Defendants in an amount suitable to punish and set an example of said Defendants.

65.    Due to the conduct of Defendants, and each of them, Plaintiff has suffered general damages and special damages, all in a sum to be proved at trial. Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorneys' fees and will continue to incur attorneys' fees, all to Plaintiff's damage in a sum to be proved at trial and recoverable pursuant to 42 U.S.C. §1988.

### FALSE STATEMENTS BY DEPUTIES MUNOZ, S. GOMEZ, J. PUENTE, AND R. ROTHROCK THAT THEY HEARD A GUNSHOT.

66.    In an attempt to support the false and fabricated reports by Deputies J. Gomez and M. Gonzalez, Deputies Munoz, S. Gomez, and Rothrock similarly submit false and fabricated reports concerning the alleged Incident.

67.    Deputy Munoz falsely reported that while he was within 15 - 25 yards of where Mr. Spruill was falsely reported to have fired a weapon, he "heard a distinct sound of a loud gunshot in the area where I last saw [Mr. Spruill]"

68.    Deputy S. Gomez falsely reported that while he was within 15 - 25 yards of where Mr. Spruill was falsely reported to have fired a weapon, "as [Mr. Spruill] ran through the parking lot and over a small cinderblock wall, I heard what sounded like a gunshot coming from where [Mr. Spruill] was running."

69.    Deputy R. Rothrock falsely reported that while he was within 15 - 25 yards of where Mr. Spruill was falsely reported to have fired a weapon, after Mr. Spruill jumped over the brick wall "I heard one gunshot come from the area where the suspect was located."

**COMPLAINT FOR DAMAGES**

70.     As explained above, the video evidence clearly and unquestionably shows that Mr. Spruill neither stopped, turned, nor fired a weapon at the Deputies. Under the circumstances, it was unreasonable, improbable, and impossible to report that Mr. Spruill fired a weapon.

71.     On the contrary, as evidence shows the gunshot never occurred or that Mr. Spruill never fired a weapon, it would seem Deputies Munoz, S. Gomez, and R. Rothrock all conspired to fabricate the conspicuously same story in an attempt to falsely charge and maliciously prosecute Mr. Spruill as well as cover up Deputies J. Gomez's and M. Gonzales' improper violations as described above and herein.

72.     Based on the facts readily available and known to the Deputies, no reasonable conclusion could be drawn that Mr. Spruill attempted to murder the officers. All objective facts readily available and known to the Deputies could not have reasonably led the Deputies to conclude that Plaintiff had committed or was committing the crime of firing a weapon and attempting to murder the Deputies.  Moreover, in light of the foregoing, no material ambiguities existed to cause the Deputies to believe that Plaintiff shot at the Deputies, let alone the degree of detailed provided by the Deputies. As such, no reasonable person or reasonable officer, acting on said facts, could sensibly or reasonably conclude that Plaintiff committed said crimes.

73.     Deputies Munoz, S. Gomez, and Rothrock, under color of law intentionally, recklessly, negligently, unlawfully, with malice, fraud, and oppression violated Plaintiff's Civil Rights to be free from unreasonable search and seizure without due process in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the U.S. Constitution. Plaintiff further alleges that Defendants, with deliberate indifference to and reckless disregard for the safety and well-being of Plaintiff, and in violation of the Fourth and Fourteenth Amendments to the Constitution, did on December 3, 2019, commit or allow to be committed, acts which deprived Plaintiff of his Constitutional rights without affording him due process of law.

**COMPLAINT FOR DAMAGES**

74. Moreover, Deputies Munoz, S. Gomez, and Rothrock knowingly, intentionally, and directly participated in and engaged in efforts to cover up said unlawful conduct by providing false statements and preparing or authorizing or approving false police reports concerning their observations of Mr. Spruill. The intentional submission of false statements was committed with a conscious disregard of Plaintiff's rights conferred upon him by Section 1983, Title 42 of the United States Code, the Fourth Amendment to the United States Constitution and California Civil Code Section 3333, by intentionally causing him injury and arresting him without probable cause. Defendants, and each of them, had an unlawful and discriminatory interest in seeing Plaintiff charged with criminal conduct to falsely charge, detain, and incarcerate Mr. Spruill and also to detract from Defendants unlawful arrest of Plaintiff.

75. Said conduct of Defendants constitutes malice, oppression and/or fraud, entitling Plaintiff to punitive damages against individual Defendants in an amount suitable to punish and set an example of said Defendants.

76. Due to the conduct of Defendants, and each of them, Plaintiff has suffered general damages and special damages, all in a sum to be proved at trial. Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorneys' fees and will continue to incur attorneys' fees, all to Plaintiff's damage in a sum to be proved at trial and recoverable pursuant to 42 U.S.C. §1988.

***FALSE STATEMENTS BY DEPUTY J. GOMEZ AND DETECTIVE PERALES THAT MR. SPRUILL WAS OBSERVED DROPPING A WEAPON.***

77. Deputy Jaime Gomez Jr. also falsely stated the following in his Report: "[After Mr. Spruill fired the weapon,] then I saw [Mr. Spruill] drop the firearm on the grassy area of the sidewalk, near a vehicle that was parked facing east along the south curb line of 135th Street. The vehicle was parked between a tree and a 'Mettler Avenue' street sign, directly in front of 432/434 135th Street, approximately where [Mr. Spruill] dropped the firearm."

**COMPLAINT FOR DAMAGES**

78.     As described and depicted above, the video footage clearly captures this scene and at no point does Mr. Spruill temporarily stop, turn, pull a firearm, shoot a weapon, or drop a firearm. The video footage clearly would have captured this alleged incident and clearly would have captured Mr. Spruill tossing or dropping a weapon.

79.     Similarly, Detective L. Perales falsely stated in his report that Mr. Spruill was observed dropping the weapon in the location that Deputy J Gomez describes. Detective Perales states that "On December 04, 2019, while at the scene to investigate, I was able to obtain video surveillance from 'Golden Bird Chicken'…" His report clearly indicates that he is aware of the location where Mr. Spruill allegedly stopped, turned, fired a weapon, and immediately discarded the weapon. Detective Perales describes the parked vehicle that Deputy J Gomez alleged he saw Mr. Spruill fire and immediately discard the firearm (i.e. "The vehicle was parked between a tree and a 'Mettler Avenue' street sign, directly in front of 432/434 135th Street, approximately where [Mr. Spruill dropped the firearm.")

80.     Despite the video footage clearly showing that Mr. Spruill did not stop, turn, fire a weapon or discard any weapon, Detective Perales falsely reports that: "Based on the above video I believe no firearm was recovered because the suspect dropped it as he ran away from the Deputies." Detective Perales describes unidentified individuals parked in between the three and the "Mettler Street" sign, but does not describe anyone stopping or picking up any items on the floor and falsely reports that: "I believe the individual(s) who were parked in the vehicle that was facing east on the south side of 125th street or any of the individuals who walked across the street towards the area could have picked up the firearm.

81.     However, Detective Perales observed the footage and knew, without question, that the allegation that Mr. Spruill stopped, turned, and fired a weapon was false and not present in the video footage.

82.     As explained above, the video evidence clearly and unquestionably shows that Mr. Spruill neither stopped, turned, fired a weapon, nor dropped a weapon. Under

the circumstances, it was unreasonable, improbable, and impossible to report that Mr. Spruill fired or dropped a weapon.

83.     Based on the facts readily available and known to Deputy J. Gomez and Detective Perales, no reasonable conclusion could be drawn that Mr. Spruill fired or dropped a weapon in that area. All objective facts readily available and known to them could not have reasonably led them to conclude that Plaintiff had dropped the weapon he had just fired.  Moreover, in light of the foregoing, no material ambiguities existed to cause Deputy J. Gomez or Detective Perales to believe that Plaintiff dropped a weapon he had just discharged. As such, no reasonable person or reasonable officer, acting on said facts, could sensibly or reasonably conclude that Plaintiff committed said crimes.

84.     Deputy J. Gomez and Detective Perales, under color of law intentionally, recklessly, negligently, unlawfully, with malice, fraud, and oppression violated Plaintiff's Civil Rights to be free from unreasonable search and seizure without due process in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the U.S. Constitution. Plaintiff further alleges that Defendants, with deliberate indifference to and reckless disregard for the safety and well-being of Plaintiff, and in violation of the Fourth and Fourteenth Amendments to the Constitution, did on December 3, 2019, commit or allow to be committed, acts which deprived Plaintiff of his Constitutional rights without affording him due process of law.

85.     Moreover, Deputy J. Gomez and Detective Perales knowingly, intentionally, and directly participated in and engaged in efforts to cover up said unlawful conduct by providing false statements and preparing or authorizing or approving false police reports concerning their observations of Mr. Spruill. The intentional submission of false statements was committed with a conscious disregard of Plaintiff's rights conferred upon him by Section 1983, Title 42 of the United States Code, the Fourth Amendment to the United States Constitution and California Civil Code Section 3333, by intentionally causing him injury and arresting him without

probable cause. Defendants, and each of them, had an unlawful and discriminatory interest in seeing Plaintiff charged with criminal conduct to falsely charge, detain, and incarcerate Mr. Spruill and also to detract from Defendants unlawful arrest of Plaintiff.

86.    Said conduct of Defendants constitutes malice, oppression and/or fraud, entitling Plaintiff to punitive damages against individual Defendants in an amount suitable to punish and set an example of said Defendants.

87.    Due to the conduct of Defendants, and each of them, Plaintiff has suffered general damages and special damages, all in a sum to be proved at trial. Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorneys' fees and will continue to incur attorneys' fees, all to Plaintiff's damage in a sum to be proved at trial and recoverable pursuant to 42 U.S.C. §1988.

### *FALSE STATEMENTS BY DETECTIVE PARALES THAT MR. SPRUILL ADMITTED TO BEING A MEMBER OF THE "WEST SIDE PIRU" GANG.*

88.    On December 4, 2019, Detectives Perales and Duarte interviewed Mr. Spruill at Century Booking. The only record of that interview is a short summary, less than a third of a single page. In terms of accepted police practices, interview summaries are never written if the interview is recorded. If it is recorded, then it is appropriate to submit a summary detailing only the time, date, and people in attendance. No case details are provided to avoid creating an inconsistency between the recorded interview and the summary. The fact that the detectives' summary does include case details indicates that the interview was not recorded. The following issues regarding the summary were noted:

89.    There is no indication that Spruill was advised of his Miranda rights. This is an absolute necessity, and all training on report writing directs the officer/ detective to include the time and manner in which the suspect was advised of his/her rights, and if the suspect explicitly waived those rights.

90.    The interview was entirely inadequate and improperly conducted. The summary states that Spruill admitted to being with the group at the barber shop, and

**COMPLAINT FOR DAMAGES**

that he panicked and ran because he had an active warrant. The summary also states that Spruill denied having or firing a gun. That is the extent of the interview, other than asking about gang affiliation. He is never asked if he heard a gunshot, or if one of the officers fired at him. He was not asked how the officers caught up to him after he was so far in front of them. There is no discussion of what happened in the backyards where he was caught. He was never asked about the earlier shooting incident. He was not asked about any comments or questions from the officers at the scene about a dropped gun. He was not even asked about his initial interactions with Gonzales and J. Gomez.

91.   Detective Perales also falsely stated the following in his Report: " [Mr. Spruill] told us he was at the barber shot… playing dice with multiple other males. He said he ran because he had a warrant… When asked about his gang affiliation[,] [Mr. Spruill] said he was from 'West Side Piru' with the moniker of 'Poppa.' He said he was an older or respected person who just comes to hang out.

92.   These statements are completely fabricated.  Mr. Spruill never stated he was playing dice at the barber shop because he wasn't even at the barber shop.  Mr. Spruill never stated he had a warrant for his arrest because he simply didn't have a warrant for his arrest.  And most alarming, Mr. Spruill did not admit to being a part of the "West Side Piru" gang or ever having the moniker of "Poppa."  These alleged admissions by Mr. Spruill were false and completely fabricated in an attempt to maliciously prosecute Mr. Spruill and support criminal charges against him the Detectives and Deputies knew to be false.

93.   Deputy J. Gomez and Detective Perales, under color of law intentionally, recklessly, negligently, unlawfully, with malice, fraud, and oppression violated Plaintiff's Civil Rights to be free from unreasonable search and seizure without due process in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the U.S. Constitution. Plaintiff further alleges that Defendants, with deliberate indifference to and reckless disregard for the safety and well-being of Plaintiff, and in violation of the Fourth and Fourteenth Amendments to the Constitution, did on

December 3, 2019, commit or allow to be committed, acts which deprived Plaintiff of his Constitutional rights without affording him due process of law.

94.     Detective Perales knowingly, intentionally, and directly participated in and engaged in efforts to cover up said unlawful conduct by providing false statements and preparing or authorizing or approving false police reports concerning his interrogation of Mr. Spruill. The intentional submission of false statements was committed with a conscious disregard of Plaintiff's rights conferred upon him by Section 1983, Title 42 of the United States Code, the Fourth Amendment to the United States Constitution and California Civil Code Section 3333, by intentionally causing him injury and bringing charges against him without probable cause. Defendants, and each of them, had an unlawful and discriminatory interest in seeing Plaintiff charged with criminal conduct to falsely charge, detain, and incarcerate Mr. Spruill and also to detract from Defendants unlawful arrest of Plaintiff.

95.     Said conduct of Defendants constitutes malice, oppression and/or fraud, entitling Plaintiff to punitive damages against individual Defendants in an amount suitable to punish and set an example of said Defendants.

96.     Due to the conduct of Defendants, and each of them, Plaintiff has suffered general damages and special damages, all in sum to be proved at trial. Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorneys' fees and will continue to incur attorneys' fees, all to Plaintiff's damage in a sum to be proved at trial and recoverable pursuant to 42 U.S.C. §1988.

### *MONELL LIABILITY*

97.     Sergeant M. Rodriguez, Sergeant C. Walker, and unknown DOES of the Los Angeles County Sheriff's department were final policymakers, acting under color of law, who had final policymaking authority concerning the acts of Defendants, reviewed their reports and ratified said Defendants acts and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of Defendants acts.

**COMPLAINT FOR DAMAGES**

98.     Upon information and belief, Sergeant M. Rodriguez, Sergeant C. Walker, and unknown DOES of the Los Angeles County Sheriff's department as final policymakers had determined that the acts of Defendants were "within policy." Accordingly, Defendants Sergeants M. Rodriguez, Sergeant C. Walker, and unknown DOES of the Los Angeles County Sheriff's department are each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

99.     Upon information and belief, the custom and practice of permitting and tolerating unlawful arrests, material omissions and falsehoods to instigate criminal charges, and wrongful prosecutions - as in the case of Plaintiff, as alleged herein - is rampant within Los Angeles County and the Los Angeles County Sheriff's Department. It is learned and taught in officer training academy, and the conduct is covered up at a systemic and systematic level at the highest levels by instructing Officers to prepare false police reports that lead to criminal charges against innocent victims such as Plaintiff.

100.    Acting under color of law and pursuant to official policy or custom, Sergeant M. Rodriguez, Sergeant C. Walker, and unknown DOES of the Los Angeles County Sheriff's department knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant Deputies and Detectives in their duties to refrain from:

a.  Unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities;

b.  Unlawfully and maliciously submitting false reports with fabricated observations to knowingly bring false charges against citizens, as was done to Plaintiff, in violation of their constitutional and statutory rights, privileges, and immunities.

c.  Unlawfully and maliciously arresting, imprisoning and prosecuting a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities;

d.  Otherwise depriving Plaintiff of his constitutional and statutory rights, privileges,

and immunities.

101.   Defendants had knowledge, or had they diligently exercised the duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs done as alleged herein, were about to be committed.

102.   Sergeant M. Rodriguez, Sergeant C. Walker, and unknown DOES of the Los Angeles County Sheriff's department reviewed the various reports submitted by the Deputies and Detectives named herein and knew or should have known of the obvious inconsistencies and omissions in said reports, and signed of and approved each report without issue.  As such, the named Deputies and Detectives' improper conduct and malicious prosecution of Plaintiff were ratified, approved of, and condoned by Sergeant M. Rodriguez, Sergeant C. Walker, and unknown DOES of the Los Angeles County Sheriff's department.

103.   Defendants had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and yet knowingly, recklessly or with gross negligence failed or refused to do so.

104.   Defendants directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant Deputies and Detectives named herein and other arresting officers heretofore described.

105.   Defendants, Sergeant M. Rodriguez, Sergeant C. Walker, and unknown DOES of the Los Angeles County Sheriff's department, knowingly, with gross negligence, and in deliberate indifference to the Constitutional rights of citizens, maintain and permit an official policy and custom of permitting the occurrence of the types of wrongs set forth hereinabove and hereafter.

106.   Plaintiff has a constitutional interest, pursuant to the First, Fourth and Fourteenth Amendments of the United States Constitution, to be free from an arrest without probable cause and criminal charges.

107.   These policies and customs include, but are not limited to, the deliberately indifferent training of its law enforcement officers in making arrests and submitting

COMPLAINT FOR DAMAGES

truthful and accurate statements in their reports. These policies and customs also include the express and/or tacit encouragement of arrests without probable cause, the ratification of police misconduct, and the failure to conduct adequate investigations of police misconduct such that future violations do not occur.

108.   Upon information and belief, the Defendant Deputies and Detectives named herein have been involved in numerous other acts of misconduct, false arrests, the submission of false reports, and false prosecutions in other instances. Plaintiff is informed and believes that Defendants Sergeant M. Rodriguez, Sergeant C. Walker, and unknown DOES of the Los Angeles County Sheriff's department are aware of a history of abuse by these Deputies and Detectives named herein.

109.   As a direct and proximate cause of the negligent and intentional acts of Defendants, as set forth in the preceding paragraphs above, Plaintiff suffered physical injury, including but not limited to extreme embarrassment, humiliation, anxiety, ridicule, shame, nervousness, and physical upset, loss of income, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. §1983.

110.   Plaintiff is informed and believes, and thereon alleges, that the customs and policies were the moving force behind the violations of Plaintiff's rights. Based upon the principles set forth in Monell v. New York County Dept. of Social Services, the Defendants are liable for all of the injuries sustained by Plaintiff as set forth above.

111.   In acting as alleged herein, Defendants, caused Plaintiff general and special damages, in an amount to be determined at the time of trial.

112.   Due to the conduct of Defendants, Plaintiff has been required to incur attorneys' fees and will continue to incur attorneys' fees, all to Plaintiff's damage in a sum to be proved at trial and recoverable pursuant to 42 U.S.C. §1988.

COMPLAINT FOR DAMAGES

## **FIRST CLAIM FOR RELIEF**

### **VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**

### **UNREASONABLE SEARCH AND SEIZURE**

### (***Plaintiff against all Defendants***)

113. Plaintiff realleges and incorporates by reference the paragraphs and allegations contained in all the preceding paragraphs of this Complaint, as though fully set forth herein.

114. Defendants searched, seized, and detained Plaintiff without reasonable suspicion or probable cause and arrested him without probable cause.

115. When Defendant Officers searched, seized, and arrested Plaintiff, as alleged herein, they violated Plaintiff's right to be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

116. Defendants knew that their conduct could and would likely result in the violation of Plaintiff's civil rights and would result in further significant injury or the unnecessary and wanton infliction of emotional distress but disregarded those risks and contributed and caused damages to Plaintiff.

117. The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

118. As a result of their misconduct, Defendants are liable for Plaintiff's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

/ / /

**COMPLAINT FOR DAMAGES**

# SECOND CLAIM FOR RELIEF

## VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

### *DEVEREAUX* CLAIM

**(*Plaintiff against all Defendants*)**

119.   Plaintiff realleges and incorporates by reference the paragraphs and allegations contained in all the preceding paragraphs of this Complaint, as though fully set forth herein.

120.   At all times material to this Complaint, Defendants were acting under color of the law in violating Plaintiff's constitutional rights as herein under the Fourth and Fourteenth Amendments to the Constitution of the United States. The Fourth and Fourteenth Amendments are made applicable to the States pursuant to 42 U.S.C §1983.

121.   Defendants deprived Plaintiff of rights, privileges, and immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution by, *inter alia*, subjecting Plaintiff to an unlawful search and seizure, arresting and/or causing Plaintiff to be arrested without probable cause, conspiring to deprive Plaintiff of his constitutionally protected rights, submitting reports with material omissions, providing falsehoods to secure an arrest and prosecution of Plaintiff.

122.   Defendants directly participated and/or aided and abetted in the wrongful search and seizure of Plaintiff and engaged in efforts to cover up said wrongful conduct by providing false testimony, preparing or authorizing or approving false police reports, and/or aiding and abetting the preparation, authorization, or approval of false police reports to maliciously prosecute Plaintiff.

123.   Due to the conduct of Defendants, and each of them, Plaintiff has suffered general damages and special damages, all in sum to be proved at trial. Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorneys' fees and will continue to incur attorneys' fees, all to Plaintiff's damage in a sum to be proved at trial and recoverable pursuant to 42 U.S.C. §1988.

124.   Defendants acted with a conscious disregard of Plaintiff's rights conferred upon him by Section 1983, Title 42 of the United States Code, the Fourth Amendment to the United States Constitution and California Civil Code Section 3333, by intentionally causing him injury and arresting him without probable cause. Defendants, and each of them, had an interest in seeing Soderberg charged with criminal conduct to detract from Defendants unlawful conduct and shooting of Soderberg and use of excessive force.

125.   Said conduct of Defendants constitutes malice, oppression and/or fraud, entitling Plaintiff to punitive damages against individual Defendants in an amount suitable to punish and set an example of said Defendants.

### THIRD CLAIM FOR RELIEF

### MALICIOUS PROSECUTION

### (*Plaintiff against all Defendants*)

126.   Plaintiff realleges and incorporates by reference the paragraphs and allegations contained in all the preceding paragraphs of this Complaint, as though fully set forth herein.

127.   At all times material to this Complaint, Defendants were acting under color of the law in violating Plaintiff's constitutional rights as herein under the Fourth and Fourteenth Amendments to the Constitution of the United States. The Fourth and Fourteenth Amendments are made applicable to the States pursuant to 42 U.S.C §1983.

128.   Defendants deprived Plaintiff of rights, privileges, and immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution by, *inter alia*, subjecting Plaintiff to an unlawful search and seizure, arresting and/or causing Plaintiff to be arrested without probable cause, conspiring to deprive Plaintiff of his constitutionally protected rights, submitting reports with material omissions, providing falsehoods to secure an arrest and prosecution of Plaintiff.

129.   Defendants directly participated and/or aided and abetted in the wrongful search and seizure of Plaintiff and engaged in efforts to cover up said wrongful conduct

by providing false testimony, preparing or authorizing or approving false police reports, and/or aiding and abetting the preparation, authorization, or approval of false police reports to maliciously prosecute Plaintiff.

130. As a proximate cause of the conduct of Defendants, as alleged hereinabove, Plaintiff has suffered damages that he was required to be arrested and charged for false claims submitted by Defendants, incurring needless expense for attorneys' fees and costs and remaining falsely detained pending charges. Further, Plaintiff suffered extreme emotional anguish due to the incarceration and pending criminal charges, all in an amount to be proven at trial.

131. As a proximate cause of the conduct of Defendants, as alleged hereinabove, Plaintiff was harmed to his health, physical and emotional state, and has incurred damages, all in an amount to be proven at trial.

132. Due to the conduct of Defendants, and each of them, Plaintiff has suffered general damages and special damages, all in sum to be proved at trial. Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorneys' fees and will continue to incur attorneys' fees, all to Plaintiff's damage in a sum to be proved at trial and recoverable pursuant to 42 U.S.C. §1988.

133. Defendants acted with a conscious disregard of Plaintiff's rights conferred upon him by Section 1983, Title 42 of the United States Code, the Fourth Amendment to the United States Constitution and California Civil Code Section 3333, by intentionally causing him injury and arresting him without probable cause. Defendants, and each of them, had an interest in seeing Soderberg charged with criminal conduct to detract from Defendants unlawful conduct and shooting of Soderberg and use of excessive force.

134. Said conduct of Defendants constitutes malice, oppression and/or fraud, entitling Plaintiff to punitive damages against individual Defendants in an amount suitable to punish and set an example of said Defendants.

**COMPLAINT FOR DAMAGES**

**FOURTH CLAIM FOR RELIEF**

**VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**

*MONNEL* **CLAIM**

**(Plaintiffs against the County and DOES 11 through 15)**

135.   Plaintiff realleges and incorporates by reference the paragraphs and allegations contained in all the preceding paragraphs of this complaint, as though fully set forth herein.

136.   At all relevant times, Defendants acted under color of law. The acts of Defendants deprived Plaintiff of particular rights under the United States Constitution.

137.   Upon information and belief, the County and DOES 11 through 15 were final policymaker, acting under color of law, who had final policymaking authority concerning the acts of Defendants, ratified Defendants acts and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of Defendants acts.

138.   Upon information and belief, the County as final policymakers has determined that the acts of Defendants were "within policy."

139.   By reason of the aforementioned acts and omissions, Plaintiff suffered damages as alleged herein.

140.   Accordingly, Defendants are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

141.   The training policies of Defendants were not adequate to train its officers to handle the usual and recurring situations with which they must deal.

142.   Defendants were deliberately indifferent to the obvious consequences of its failure to train Defendant Officers adequately.

143.   The failure of Defendants to provide adequate training caused the deprivation of Plaintiff's rights; that is, Defendant's failure to train is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

144.   On information and belief, Defendants failed to train Defendant Officers properly and adequately.

145.   By reason of the aforementioned acts and omissions, Plaintiff suffered damages as alleged herein.

146.   Accordingly, Defendants are each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

147.   Defendant Officers acted pursuant to an expressly adopted policy or a longstanding practice or custom of the County.

148.   On information and belief, Defendant Officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Soderberg's death.

149.   Defendants together with policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)  Searching persons without reasonable suspicion or probable cause.

(b)  Detaining persons without reasonable suspicion or probable cause.

(c)  Arresting persons without reasonable suspicion or probable cause.

(d)  Violating persons Fourth Amendment rights.

(e)  Maliciously prosecuting persons.

(f)  Searching persons with knowledge that they had no reasonable suspicion or probable cause.

(g)  Detaining persons with knowledge that they had no reasonable suspicion or probable cause.

(h)  Arresting persons with knowledge that they had no reasonable suspicion or probable cause.

(i)  Engaging in conduct with knowledge that they would maliciously prosecute persons.

(j)  Engaging in conduct with knowledge that they would violate persons Fourth Amendment rights.

(k)  Directly participating and/or aiding and abetting in efforts to cover up unlawful searches and/or aiding and abetting in the preparation, authorization, or approval of false police reports.

(l)  Directly participating and/or aiding and abetting in efforts to cover up unlawful seizures and/or aiding and abetting in the preparation, authorization, or approval of false police reports.

(m)  Directly participating and/or aiding and abetting in efforts to cover up unlawful arrests and/or aiding and abetting in the preparation, authorization, or approval of false police reports.

(n)  Directly participating and/or aiding and abetting in efforts to cover up malicious prosecution and/or aiding and abetting in the preparation, authorization, or approval of false police reports.

(o)  Directly participating and/or aiding and abetting in efforts to cover up civil rights violations and/or aiding and abetting in the preparation, authorization, or approval of false police reports.

(p)  Inadequately supervising, training, controlling, assigning, and disciplining officers, and other personnel, including Defendant Officers, who Defendant County knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits.

(q)  Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by officers, including Defendant Officers.

(r)  Failing to adequately discipline officers, including Defendant Officers, for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

(s)  Announcing that unjustified conduct, as alleged herein, are "within policy,"

that were later determined in court to be unconstitutional.

(t)  Even where conduct, as alleged herein, is determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved.

(u)  Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police misconduct, as alleged herein, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in unjustified shootings.

150.   By reason of the aforementioned acts and omissions, Plaintiff has suffered damages as alleged herein.

151.   The County, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Soderberg, Plaintiff, and other individuals similarly situated.

152.   By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, the County acted with intentional, reckless, and callous disregard for Plaintiff's constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff.

153.   Accordingly, Defendants County and DOES 11 through 15 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

/ / /

COMPLAINT FOR DAMAGES

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff *LYLE SPRUILL* prays for judgment against the all Defendants and DOES 1 - 15, inclusive, as follows:

1.     For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount of $20 million;

2.     For funeral and burial expenses, and loss of financial support;

3.     For punitive damages against the individual defendants in an amount to be proven at trial;

4.     For interest;

5.     For reasonable attorneys' fees, including litigation expenses;

6.     For costs of suit; and

7.     For such further other relief as the Court may deem just, proper, and appropriate.


## **DEMAND FOR JURY TRIAL**

Plaintiff *LYLE SPRUILL* hereby demand a jury trial.


DATED:  August 28, 2020                    **KIRAKOSIAN  LAW, APC**


                                        */s/ Greg L. Kirakosian*
                        By: _____.
                                        GREG L. KIRAKOSIAN
                                        Attorneys for Plaintiff
                                        *LYLE SPRUILL*

**COMPLAINT FOR DAMAGES**